UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

JEFFREY FARKAS, M.D., LLC,

Plaintiff,

**MEMORANDUM & ORDER**
23-CV-9015 (EK)(AYS)

-against-

UNITED HEALTHCARE INSURANCE CO., et al.,

Defendants.

-------------------------------------x

ERIC KOMITEE, United States District Judge:

Plaintiff Jeffrey Farkas, M.D., LLC is a medical practice employing a "team of neurologists," according to the operative complaint. This case joins a line of actions it has brought against health insurers, alleging underpayment of billed claims.[1]

Farkas physicians performed brain surgery on a patient in June 2019. *After* the operation, a Farkas employee contacted the patient's insurer — Oxford Health Insurance, a defendant here — by telephone. The employee requested an "in-network / gap exception" — essentially, confirmation that Oxford would

[1] *See, e.g.*, *Jeffrey Farkas, M.D., LLC v. United Healthcare Ins. Co.*, No. 523667/2023, 2025 WL 817546 (N.Y. Sup. Ct. Mar. 14, 2025); *Jeffrey Farkas, M.D., LLC v. Cigna Health & Life Ins. Co.*, 386 F. Supp. 3d 238 (E.D.N.Y. 2019); *Farkas v. Grp. Health Inc.*, No. 18-CV-8535, 2019 WL 2235959, (S.D.N.Y. May 19, 2019); *Farkas v. UFCW Loc. 2013 Health & Welfare Fund*, No. 17-CV-2598, 2018 WL 5862741 (E.D.N.Y. Sept. 12, 2018); *Sundown by Farkas v. Aetna Life Ins. Co.*, No. 23-CV-1905, 2024 WL 1051165 (E.D.N.Y. Jan. 16, 2024).

cover the operation, notwithstanding that Farkas was an out-of-network provider under the patient's plan. The employee authorized the gap exception. According to Farkas, this authorization meant that Oxford would either pay all "billed charges or alternatively . . . an agreed upon rate." Farkas subsequently filed a claim for more than $207,000, but Oxford paid only about one-sixth of that amount. This litigation followed.

Farkas brings state-law claims for promissory estoppel and tortious interference with contract. Defendants have moved to dismiss for failure to state a claim. For the reasons set forth below, that motion is granted.

## I. Background

In light of concerns raised by the Court at oral argument, Farkas sought — and was granted — leave to file a third amended complaint. *See* Docket Order dated September 10, 2025; Third Am. Compl. ("Compl."), ECF No. 31.[2] The following facts are drawn therefrom and are presumed true for purposes of

[2] When a plaintiff amends its complaint while a motion to dismiss the prior complaint is pending, the Court has a series of options. These include "considering the merits . . . in light of the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020). Both parties addressed the merits of plaintiff's new allegations in briefing the question of leave to amend. In the interest of judicial economy, therefore, the Court assesses the pending motion to dismiss against the facts set out in the third amended complaint. *See, e.g.*, *John-Cedeno v. Kings Cnty. Hosp.*, No. 22-CV-7959, 2024 WL 3886580, at *3 (E.D.N.Y. Aug. 21, 2024).

this action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Farkas is a medical provider based in New Jersey that specializes in neurology. Compl. ¶¶ 1, 6. On June 28, 2019, physicians at Farkas performed brain surgery on a patient at a hospital in Long Island. *Id.* ¶¶ 7-8. The patient was a beneficiary of an Oxford-administered health plan. *Id.* ¶ 9.[3] Farkas was an "out-of-network provider," and thus had no network contract with Oxford that would set payment terms for the operation. *Id.* ¶ 10. "[N]o other provider" was "available to perform" the required treatment. *Id.* ¶ 11. Separately, Farkas "entered into an express or implied contractual agreement with" the patient that he would cover "any medical charges not covered by this health plan." *Id.* ¶ 39.

Farkas's first three complaints alleged that "*prior* to [the patient's] treatment," Farkas requested, and was granted, an "in-network" or "gap" exception. Second Am. Compl. ¶ 11, ECF No. 14; First Am. Compl. ¶ 10, ECF No. 1-1; Compl. ¶ 8, *Jeffrey Farkas, M.D., LLC v. United Healthcare Ins. Co.*, No. 608339/2023, Dkt. No. 1 (N.Y. Sup. Ct. May 24, 2023) (emphasis

[3] Per Farkas, Oxford "is either a subsidiary of" United HealthCare Insurance Company, or both are subsidiaries of a common parent. *Id.* ¶ 9 n.1. At various points, the defendants have asserted that United Healthcare was improperly joined, but "[b]ecause the Court grants Defendants' motion to dismiss, it need not analyze whether some of the Defendants are improperly joined." *Zoia v. United Health Grp. Inc.*, No. 24-CV-2190, 2025 WL 278820, at *4 n.10 (S.D.N.Y. Jan. 23, 2025).

added). Those complaints were notably silent on the date and manner of this request. The Third Amended Complaint, which is now operative, alleges that on August 16, 2019 — after the treatment — Farkas representative Elizabeth Chinich called Oxford and requested the gap exception. Compl. ¶ 13.[4]

Oxford authorized the gap exception during that call. *Id.* ¶ 14. According to Farkas, pursuant to "industry protocols," a gap exception is when an insurer agrees to cover out-of-network treatment in a manner that exposes its insured to "no greater cost-sharing than if the member underwent" the treatment in-network. *Id.* ¶ 16.[5] Farkas alleges that Oxford was thus obligated "to either pay . . . billed charges, or negotiate an agreeable rate." *Id.* ¶ 24.

The next day, Farkas submitted a claim form to Oxford, seeking $207,832 in payment. *Id.* ¶ 18; ECF No. 31-1. Oxford ultimately paid Farkas $35,732.20. Compl. ¶ 19. The insurer also sent Farkas an "explanation of benefits" form setting forth

[4] The operative complaint now includes this specific date — after the treatment — but still alleges that the communication was "prior to . . . treatment." The specific allegation controls. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."). And that Farkas ultimately submitted its claim to Oxford the very next day is probative that this date is not a typo. *See* ECF No. 31-1.

[5] Using the authorization number alleged in the complaint, Oxford found a letter purporting to explain the gap exception's terms. However, because the complaint does not allege that the gap exception was ever reduced to writing, the Court does not consider this document at this stage. *See Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 12 (D. Conn. 2019).

Oxford's reasons for paying less than the full amount billed and stating that the patient's responsibility was $0. *See Id.* ¶ 20; ECF No. 31-2. Finally, it asked Farkas to "[p]lease . . . not bill the patient above the amount of any co-insurance, co-pay or deductible that is applied to this service." *Id.* Farkas appealed this determination at Oxford, to no avail. Compl. ¶¶ 21-22. Farkas has been unable to "pursu[e]" the patient for the remaining balance — approximately $170,000 — because of Oxford's statement regarding the patient's responsibility. *Id.* ¶ 43.

Farkas sued in state court, alleging one cause of action under the Employee Retirement Security Act ("ERISA") alongside three state-law claims. After removal and the submission of pre-motion conference letters, Farkas amended its complaint to drop its ERISA claim and its unjust enrichment claim. The parties are diverse,[6] and Farkas now has two state-law claims remaining: promissory estoppel and tortious interference with contract.

Defendants have moved to dismiss, arguing that both claims are preempted by ERISA and that the complaint otherwise fails to state a claim on either.

[6] Defendants are citizens of Connecticut, New York, and Minnesota, Compl. ¶ 3, and Farkas is a citizen of New Jersey, ECF No. 25.

## II. Discussion

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). The Court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).[7]

Defendants have moved to dismiss, arguing that ERISA preempts Farkas's state-law causes of action, and that the complaint fails to state a claim in any event. The second issue is dispositive, but we consider the first as well, as it requires dismissal of Farkas's tortious interference claim (but not the promissory estoppel claim). In addition, we conclude that Farkas has failed to state a claim on either cause of action.

[7] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

**A. ERISA Preemption**

ERISA's preemption clause is "terse but comprehensive." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016). ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Recognizing how broadly "relate to" can be read, the Supreme Court has rejected "uncritical literalism" in its application. *Gobeille*, 577 U.S. at 319; *see also New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course . . . .").

"A state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020). "[A]n impermissible connection with" an ERISA plan exists when state law "governs a central matter of plan administration or interferes with nationally uniform plan administration." *Gobeille*, 577 U.S. at 320. An impermissible "reference to" an ERISA plan exists where the law "acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." *Id.* at 319-20.

"As to state common law claims, ERISA preempts those that seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)).

The Second Circuit has held that a promissory estoppel claim brought by an out-of-network provider was not preempted under ERISA. *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 152 (2d Cir. 2017). Because the provider was not "the type of party that can bring a claim" pursuant to ERISA, the claim did not "implicate[] coverage and benefit determinations as set forth" by the plan, and the legal duty was independent of it. *Id.* at 146-151. The claims in *McCulloch* had been removed from state court, and implicated the jurisdictional doctrine of complete preemption, rather than express preemption, as is the case here. Still, *McCulloch* is relevant, given the overlap in the two doctrines. The Second Circuit has relied on the Supreme Court's *Davila* decision (involving complete preemption) in express preemption cases. *See, e.g.*, *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 61 (2d Cir. 2010); *Paneccasio*, 532 F.3d at 114. And district courts have applied *McCulloch* in the express preemption context. *See, e.g.*, *Aesthetic & Reconstructive Breast Ctr., LLC v. United

*HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 10 (D. Conn. 2019) (considering *McCulloch* in analyzing whether state-law claims were expressly preempted by ERISA); *Jay Kripalani M.D., P.C. v. Indep. Blue Cross*, No. 23-CV-4225, 2024 WL 4350492, at *6 (E.D.N.Y. Sept. 30, 2024) (same).

1. <u>The Promissory Estoppel Claim Is Not Preempted</u>

Farkas alleges that it relied on Oxford's promise that it would be paid according to industry custom. This claim is not preempted.

As in *McCulloch*, Farkas is not the type of party that can bring an ERISA claim. Indeed, Farkas voluntarily dismissed its ERISA claim. Gottlieb Ltr., ECF No. 11. The Second Circuit has "noted a reluctance to find ERISA preemption where state laws do not affect the relationships among the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries." *Stevenson*, 609 F.3d at 59. As an out-of-network provider, Farkas is not among this litany of entities.

More specifically, the promissory estoppel claim does not implicate the plan. The alleged oral promise did not reference the patient's policy; like in *McCulloch*, it was a separate promise by an Oxford representative to pay an industry rate. That claim would not require analysis of the plan's terms. The plan does not set (or even mention) rates for out-

of-network providers; it only discusses a member's own possible liability for services performed by out-of-network providers. ECF No. 21-2, at 56.[8]

Thus, the determination of both liability *and* damages on a promissory estoppel claim would proceed independently of the plan's terms. As to liability, Oxford had no ERISA-covered duty to Farkas, an out-of-network provider. As in *McCulloch*, the "promissory-estoppel claim" here "arises not from an alleged violation of some right contained in the plan, but rather from a freestanding state-law duty grounded in conceptions of equity and fairness." 857 F.3d at 150. In the end, "this is simply a suit between a third-party provider and an insurer based on the insurer's independent promise." *Id.* at 151.

As to damages, the amount due on a promissory estoppel claim, if one were established, would hinge on the nature of any promise found to have been made on the call between Farkas and Oxford. *See Aesthetic & Reconstructive Breast Ctr., LLC*, 367 F. Supp. 3d at 10 (promissory estoppel claim would turn on "what could fairly be inferred" from call between provider and insurer, and whether the "subsequent disposition" of provider's

---

[8] The Court may take judicial notice of the plan, because Farkas refers to the plan in its complaint, and "whether [patient's] plan was an ERISA-regulated plan, and whether an out-of-network provider like [Farkas] was the recipient of any duty under the plan, are threshold questions that rely on the terms of the plan and are necessary to resolve in order to advance [Farkas's] challenge to the merits stage." *Park Avenue Podiatric Care v. Cigna* Health, No. 23-1134-CV, 2024 WL 2813721, at *3 (2d Cir. June 3, 2024).

claim was "consistent with that expectation"); *see also* *Stevenson*, 609 F.3d at 61 (cause of action not preempted where "resolution does not require a court to review the propriety of an administrator's or employer's determination of benefits under such a plan").

To be sure, Farkas only communicated with Oxford because Oxford was the patient's insurer. *See* Compl. ¶ 9. But "[t]he mere fact that a claim arises against the factual backdrop of an ERISA plan does not mean it makes 'reference to' that plan." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 236 (3d Cir. 2020). The plan "simply provides the context for [Farkas's] claim." *McCulloch*, 857 F.3d at 149.

The defendants' reliance on *Park Avenue Podiatric Care v. Cigna Health* does not change this conclusion. No. 23-1134-CV, 2024 WL 2813721, at *1 (2d Cir. June 3, 2024). That unpublished opinion did not cite *McCulloch*, and the two cases are hard to square with one another. Moreover, in this case, unlike in *Park Avenue*, the complaint does not "make clear that [the insurer] communicated the terms of [patient's] out-of-network coverage *under* [the patient's] employee health plan." *Id.* at *2 (emphasis added). Farkas relies on "industry protocols" to allege the amount due — not the terms of the plan. Compl. ¶ 16.

2. Tortious Interference

Farkas also claims that Oxford tortiously interfered with Farkas's contract with its patient. Oxford did so, according to Farkas, by sending the letter explaining payment and stating that the patient had no payment obligation to the provider.

This claim *is* preempted. Unlike with the promissory estoppel claim, the tortious interference claim *does* implicate the actual coverage terms of the plan. To plead a tortious interference claim under New York law, a plaintiff must allege interference that was "intentional, not merely negligent or *incidental to some other, lawful, purpose*." *Alvord & Swift v. Stewart M. Muller Constr. Co.*, 385 N.E.2d 1238, 1241 (N.Y. 1978) (emphasis added). Here, the patient's health plan will be front and center in the determination of whether Oxford had a "lawful purpose" for describing the patient's financial obligations as it did in the "explanation of benefits" letter. In this vein, the Court would need to determine whether plan terms were "properly applied" to determine liability. *McCulloch*, 857 F.3d at 149.

**B. The Complaint Fails to State a Claim Under New York Law**

Though one of Farkas's claims survives a preemption analysis, both fail on the merits.

1. Promissory Estoppel

"Federal courts, when applying state law, are bound to apply the law as established by the state's highest court." *Donohue v. Cuomo*, 980 F.3d 53, 65 (2d Cir. 2020).[9] That law is surprisingly sparse, as far as Farkas's promissory estoppel claim is concerned: the New York Court of Appeals has "never recognized promissory estoppel as a standalone cause of action." *Bentkowski v. City of New York*, No. 57, 2025 WL 1697939, at *3 (N.Y. June 18, 2025).[10] In the absence of such authority, New York's intermediate appellate courts are binding, unless there is "persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 139 n.15 (2d Cir. 2018).

All four departments of the Appellate Division have recognized the claim, however, with a consistent set of elements. These are: "(i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance." *Castellotti v. Free*, 27 N.Y.S.3d 507, 513 (App. Div. 1st Dep't 2016); *accord NGR, LLC v. Gen. Elec. Co.*, 807 N.Y.S.2d 105, 105 (App. Div. 2d Dep't 2005);

[9] "The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

[10] The Court of Appeals has applied the doctrine in equity — for example, to estop reliance on the statute of frauds. *See, e.g.*, *In re Est. of Hennel*, 80 N.E.3d 1017, 1022-23 (N.Y. 2017).

*DerOhannesian v. City of Albany*, 975 N.Y.S.2d 188, 192 (App. Div. 3d Dep't 2013); *Vassenelli v. City of Syracuse*, 31 N.Y.S.3d 320, 325 (App. Div. 4th Dep't 2016).

Farkas has failed to plead reasonable reliance on a promise. The complaint must allege that Farkas "did something, or refrained from doing something, in reliance on" the alleged promise. *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 694 (App. Div. 1st Dep't 2015). The problem for Farkas is that the promise it claims to have relied on — the "gap exception" — *post-dated* the action it took (the surgery). Oxford allegedly granted the gap exception on a phone call on August 16, 2025 — nearly two months after the operation. Thus, Farkas could not have "changed its position . . . as a consequence of the promise or in justified reliance thereon." *I. & I. Holding Corp. v. Gainsburg*, 12 N.E.2d 532, 536 (N.Y. 1938); *see also* 3 Corbin on Contracts § 8.4 (2025) ("In the case of action in reliance . . . the promise comes first and induces the subsequent action in reliance.").

That is of course fatal. The complaint is also deficient, however, because it fails to plead a sufficiently clear and unambiguous promise. To plead a valid promissory estoppel claim, the alleged promise must not be "vague and indefinite." *Sanyo Elec., Inc. v. Pinros & Gar Corp.*, 571 N.Y.S.2d 237, 238 (App. Div. 1st Dep't 1991). Farkas alleges,

vaguely and without supporting factual content, that the gap exception required reimbursement "in a manner that exposes its [patient] to no greater cost-sharing than if the [patient] underwent the subject treatment with an in-network provider" (a conclusion ostensibly emanating from undescribed industry protocols). Compl. ¶ 16. Farkas goes on to allege that it was owed *either* the full amount billed or an alternative "agreed upon rate." *Id.* ¶ 17.

None of this comes close to explaining how the alleged promise would actually have operated. "A promise is not 'clear and unambiguous' where the allegations are premised on an ambiguity or where the alleged promise is conditional upon further agreements or negotiations." *Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *4 (2d Cir. Sept. 27, 2024). Farkas's nebulous references to unspecified "industry protocols" and some later-"agreed upon rate" cannot support a promissory estoppel claim. And a promise that *the member* would encounter no more cost-sharing than if Farkas was in-network says nothing about what Farkas itself was owed.

The cases Farkas cites to the contrary involved discrete promises to pay either a sum certain or via a specific formula. *See, e.g.*, *Samra Plastic & Reconstructive Surgery v. Cigna Health & Life Ins. Co.*, No. 23-CV-22521, 2024 WL 3444273,

at *7 (D.N.J. July 17, 2024) ("[Provider] alleges that [insurer] agreed to pay 70% of the charges billed."). No such clear and unambiguous promise exists here. This claim must therefore be dismissed.

2. Tortious Interference

Under New York law, a plaintiff bringing a tortious interference with contract claim "must show [(1)] the existence of its valid contract with a third party, [(2)] defendant's knowledge of that contract, [(3)] defendant's intentional and improper procuring of a breach, and [(4)] damages." *White Plains Coat & Apron Co. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007). Moreover, "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 127 (2d Cir. 2019). Farkas argues that Oxford's explanation of benefits — indicating that the patient had no further liability — interfered with its contract with the patient. But Farkas fails to allege several of these elements.

First, Farkas has failed to plausibly plead that it entered into a contract with the patient. To do so, a plaintiff "must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (App. Div. 1st Dep't 2009). The complaint merely alleges that the patient "entered

into an express or implied contractual agreement with [Farkas] to pay for any medical charges not covered by his health plan." Compl. ¶ 39. But that is a "legal conclusion[] masquerading as" a factual one and need not be credited. *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). The complaint includes no allegations of offer or acceptance, or an intent to be bound on these terms. Nor does the complaint plausibly allege an implied contract. There are no allegations from which the Court could "derive[] . . . the presumed intention of the parties" via their conduct. *Jemzura v. Jemzura*, 330 N.E.2d 414, 420 (N.Y. 1975).

Second, Farkas has not adequately alleged that any interference was intentional or improper. Interference that is "merely negligent or incidental to some other, lawful, purpose" is not tortious. *Alvord*, 385 N.E.2d at 1241; *see Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190 (1980) ("Section 767 of the Restatement sets out several factors for consideration in determining whether an intentional interference with a contract is 'improper.'"); Restatement (Second) of Torts §§ 766-67 (describing improper means including threats of harm, offering better terms, and moral pressure).

Finally, the complaint includes no allegation that a breach would not have occurred "but for" Oxford's representations. The complaint only refers to Farkas's efforts

to collect on payment. It does not allege how Oxford's representations caused the patient to change his behavior in any way, let alone to breach the contract.

**III. Conclusion**

For the reasons set forth above, the motion to dismiss for failure to state a claim is granted. The dismissal is with prejudice, as the Court declines to grant further leave to amend *sua sponte*. *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made."). Farkas has amended its complaint three times (twice since removal). And it has long been on notice of the defendants' arguments. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: October 3, 2025
Brooklyn, New York